**TOM PETRUS & MILLER LLLC**

RICHARD B. MILLER                    3729-0
rmiller@tpm-hawaii.com
PATRICIA KEHAU WALL            3498-0
rmiller@tpm-hawaii.com
IAN A. NISHI                              9829-0
inishi@tpm-hawaii.com

Finance Factors Center, Suite 650
1164 Bishop Street
Honolulu, Hawaii  96813
Telephone: (808) 792-5800
Facsimile:  (808) 792-5809

Attorneys for Plaintiffs
UNITED STATES FIRE INSURANCE COMPANY AND
THE NORTH RIVER INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY AND THE NORTH RIVER INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>LALOFAU FEA,<br><br>Defendant. | CIVIL NO. 1:16-cv-00173 DKW/KSC (Declaratory Judgment)<br><br>FINDINGS AND RECOMMENDATION GRANTING PLAINTIFFS UNITED STATES FIRE INSURANCE COMPANY AND THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AGAINST DEFENDANT LALOFAU FEA |

HEARING:
Date:  October 14, 2016
Time: 9:30 a.m.
Judge: Hon. Kevin S.C. Chang

**FINDINGS AND RECOMMENDATION GRANTING PLAINTIFFS
UNITED STATES FIRE INSURANCE COMPANY AND
THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR
DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT AGAINST DEFENDANT LALOFAU FEA**

Currently pending before this Court is Plaintiffs UNITED STATES FIRE

INSURANCE COMPANY AND THE NORTH RIVER INSURANCE

COMPANY's ("US Fire") Motion for Default Judgment or, in the Alternative, for

Summary Judgment.  Said Motion came on for hearing on October 14, 2016, with

Ian A. Nishi appearing on behalf of US Fire.  Upon careful consideration of the

Motion, the supporting memoranda, and the arguments of counsel, the Court

hereby recommends that US Fire's Motion be GRANTED to the extent it seeks

default judgment.

## I.      BACKGROUND

The instant declaratory relief action was brought by US Fire to obtain a

determination as to its defense and indemnity obligations, if any, for claims

asserted against Defendant LALOFAU FEA ("Defendant") in an action entitled

*State of Hawaii v. Fea*, CR No. 14-1-1029 (the "Underlying Lawsuit").

2

**A.   The Underlying Lawsuit**

On February 11, 2016, Julie Krauss ("Krauss") (not a party hereto)
commenced the Underlying Lawsuit, which arises out of Fea's alleged attack and
sexual assault upon Krauss, against Fea, his employer AAA Rent to Own –
Hawaii, Inc. ("AAA"), and others.   The Underlying Lawsuit alleges that Fea, on
behalf of AAA, delivered and installed a television at Krauss's residence on April
12, 2014.  When the television's installation was completed, Fea allegedly trapped
Krauss in her bedroom and sexually assaulted her. *Id*. Specifically, Fea allegedly
forced his arms around Krauss and attempted to kiss her neck, groped her breasts
and buttocks, tore open her shorts, and fondled her genitalia.  Fea then allegedly
chased Krauss down a hallway as she attempted to escape, grabbed her from
behind, pinned her against the wall, and continued to molest and fondle her. *Id.*

The Underlying Complaint asserts three counts against Fea for (1) assault,
(2) intentional infliction of emotional distress, and (3) negligent infliction of
emotional distress. *Id*., generally. The Underlying Complaint further alleges that
Fea "intentionally, recklessly, or with gross negligence sexually assaulted Ms.
Krauss," and that Fea's "wrongful, criminal, intentional, and outrageous conduct in
sexually assaulting and imprisoning Ms. Krauss" has caused her to suffer: "pain
and suffering; mental anguish; emotional distress, including post-traumatic stress

3

disorder and depression; loss of enjoyment of life; loss of income; economic loss; medical expenses; and other expenses….”

**B.    Procedural History**

Plaintiffs filed their Complaint for Declaratory Judgment in this case on April 13, 2016 (the “Complaint”). The Complaint and Summons were personally served on Fea on April 20, 2016, at 94-124 Pupukahi Street, Apt. D, Waipahu, Hawaii 96797.

The time within which Fea may answer or otherwise move or defend against the Complaint, as provided by the Federal Rules of Civil Procedure or any other rule of the Court, has expired. Fea has not answered or otherwise moved in accordance with Federal Rule of Civil Procedure 12, and the time for Fea to answer or otherwise move has not been extended. Entry of Default of Fea as to the Complaint was filed by the Clerk of this Court on June 3, 2016.

**C.    The USFIC Commercial General Liability Policy**

USFIC issued Commercial General Liability Policy Number 5037714297 (the “CGL Policy”) to AAA for the relevant policy period beginning on October 1, 2013 and ending on October 1, 2014. PSCS at ¶ 13; Exhibit “7”. The CGL Policy was written on Policy Form CG0001 (12/07), as amended by various endorsements, which contains the following pertinent provisions:

4

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

    b.   This insurance applies to "bodily injury" and "property damage" only if … the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory…."

                                    * * * *

2.  **Exclusions**

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \* \*

**o.**    **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\* \* \* \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**    **Insuring Agreement**

**a**.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply….

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.**    **Exclusions**

This insurance does not apply to:

**a.**    **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \* \*

**d.** **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

\* \* \* \*

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as … an organization other than a partnership, joint venture or limited liability company, you are an insured….

\* \* \* \*

**2.** Each of the following is also an insured:

**a.** Your … "employees" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business….

\* \* \* \*

## SECTION V – DEFINITIONS

\* \* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, humiliation or death resulting from any of these at any time.

**4.** "Coverage territory" means … the United States of America….

\* \* \* \*

**13.** "Occurrence" means an accident….

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

7

      **a.**     False arrest, detention or imprisonment….

* * * *

**18.**   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged….

* * * *

PSCS at ¶ 14; Exhibit "A".

### D.    __The North River Commercial Umbrella Policy__

North River issued Commercial Umbrella Policy Number 5237079201 (the "CUP Policy") to AAA for the relevant policy period beginning on October 1, 2013 and ending on October 1, 2014. PSCS at ¶ 15; Exhibit "8". The CUP Policy was written on Policy Form FM101.0.1108 (08/05), as amended by various endorsements, which contains the following pertinent provisions:

### INTRODUCTION

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word Insured means any person or organization qualifying as such under Section III., WHO IS AN INSURED.

Other words and phrases that appear in initial capital letters or quotation marks have special meaning. Refer to Section IV., DEFINITIONS and other provisions of this policy for such meanings.

8

## I.      COVERAGE – INSURING AGREEMENT

A.      We will pay on behalf of the Insured those sums in excess of the "Retained Limit" which the Insured by reason of liability imposed by law … shall become legally obligated to pay as damages because of "Bodily Injury" or "Property Damage" or "Personal and Advertising Injury"….

B.      With respect to "Bodily Injury" and "Property Damage":

1.      This insurance applies only if … the "Bodily Injury" or "Property Damages" is caused by an "Occurrence" that occurs in the coverage territory during the Policy period stated in item 2. of the Declarations….

* * * *

C.      With respect to "Personal and Advertising Injury", this insurance applies only if the "Personal and Advertising Liability" is caused by an "Occurrence" committed in the coverage territory and during the Policy Period stated in Item 2. of the Declarations.

* * * *

## II.     DEFENSE SETTLEMENT

A.      We will have the right and duty to defend the Insured against any "Suit" seeking damages … covered by the terms and conditions of this policy, even if the allegations are groundless, false or fraudulent, when:

1.      the applicable limits of "Underlying Insurance" and "Other Insurance" have been exhausted by payment of judgments or settlements; or

2.      damages … are sought which are not covered by the terms and conditions of "Underlying Insurance" or "Other Insurance".

## III.    WHO IS AN INSURED

    **A.**    If you are designated in the Declarations as … an organization other than a partnership, joint venture or limited liability company, you are an Insured….

    **B.**    Each of the following is also an Insured:

        **1.**    Your … "Employees" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

* * * *

## IV.   DEFINITIONS

* * * *

**"Bodily Injury"** means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury or humiliation sustained by a person, including death resulting from any of these at any time.

* * * *

**"Occurrence"** means:

        **1.**    with respect to "Bodily Injury" or "Property Damage", an accident … that results in "Bodily Injury" or "Property Damage" that is not expected or intended by the Insured….

        **2.**    with respect to "Personal and Advertising Injury", an offense arising out of your business.

* * * *

**"Personal and Advertising Injury"** means injury, including consequential "Bodily Injury", arising out of one or more of the following offenses:

        **1.**    false arrest, detention or imprisonment….

* * * *

**"Retained Limit"** means:

        **1.**    with respect to any "Occurrence" that is covered by "Underlying Insurance" or "Other Insurance", the total of

10

the applicable limits of "Underlying Insurance" or "Other Insurance"; or

**2.**    with respect to any "Occurrence" that is not covered by "Underlying Insurance" or "Other Insurance", the amount of the Self-Insured Retention stated in Item 4.(f) of the Declarations.

**"Suit"** means a civil proceeding in which damages because of "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or damages … to which this insurance applies are alleged….

\* \* \* \*

**"Underlying Insurance"** means … the policies and/or Self-Insurance listed in Schedule A- Schedule of Underlying Insurance….

\* \* \* \*

## VIII.  EXCLUSIONS

This policy does not apply to:

### A.    EXPECTED OR INTENDED INJURY

"Bodily Injury" or "Property Damage" expected or intended from the standpoint of the Insured….

\* \* \* \*

### I.    PERSONAL AND ADVERTISING INJURY

"Personal and Advertising Injury"

**1.**    caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "Personal and Advertising Injury";

\* \* \* \*

**4.**    arising out of a criminal act committed by or at the direction of the Insured….

\* \* \* \*

PSCS at ¶ 16; Exhibit "B".

11

USFIC is defending Fea under the CGL Policy pursuant to a Reservation of Rights. PSCS at ¶ 17.

Pursuant to the above-quoted terms of the CGL Policy and the undisputed facts at hand, USFIC is entitled to summary judgment because the claims asserted against Fea are not for "bodily injury" caused by an "occurrence" or for "personal and advertising injury" caused by an "offense" arising out of the business of AAA. Similarly, North River is entitled to summary judgment because none of Fea's alleged acts or omissions constitute an "occurrence" under the CUP Policy. The Policies' exclusions for bodily injury arising out of Fea's intentional and/or criminal acts serve as separate and independent grounds for the granting of this Motion. Finally, pursuant to Haw. Rev. Stat. § 431:10-240, there is no coverage under the Policy for punitive damages.

## II.   <u>DISCUSSION</u>

Upon careful consideration of the materials submitted to the Court by US Fire together with the instant Motion, the Court finds that there is no no coverage afforded to Defendants in this matter.  Therefore, due to Defendant's failure to respond to the Complaint, and based on the supporting documentation which indicates a lack of coverage under the Policies, this Court recommends that default judgment be GRANTED.

**A.    Coverage A does not apply because Fea's acts and omissions do nt satisfy the Policies' "occurrence" requirements.**

The Policies afford liability coverage under Coverage A <u>only</u> when "bodily injury" is caused by an "occurrence". PSCS at ¶¶ 14, 16; Exhibit "7", Policy Form CG0001 (12/07), p. 1; Exhibit "8", Policy Form FM101.0.1108 (08/05), p. 3. The term "occurrence" is defined, in pertinent part, as "an accident." PSCS at ¶¶ 14, 16; Exhibit "7", Policy Form CG0001 (12/07), p. 13; Exhibit "8", Policy Form FM101.0.1108 (08/05), p. 11.

Under Hawaii law, an injury cannot not be considered "accidental" if it was either the "expected or reasonably foreseeable result of the insured's own intentional acts or omissions." *Hawaiian Holiday Mac. Nut Co.*, *supra*, 76 Hawaii at 170, 872 P.2d at 234. Thus, claims arising out of intentional acts (*i.e.*, sexual assault, molestation, and kidnapping) do not constitute an accident / occurrence and are not covered under Coverage A. *See id.* In determining whether a claim arises from an occurrence, Hawaii courts focus solely on the *factual* allegations in the underlying complaint and not on the legal theories pled by the plaintiff. *See Dairy Road Partners*, 92 Hawaii at 417, 992 P.2d at 112.

"When the *facts* alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate "negligent" rather than "intentional" conduct) are insufficient to

trigger the insurer's duty to defend." *Id. Bayudan*, *supra*, is instructive in this regard. That case involved an underlying lawsuit by Jennifer Lapina ("Lapina"), who had rented a room from one Florencio Bayudan ("Bayudan"). A couple of months later, Bayudan allegedly "kidnapped and sexually assault or raped" Lapina. Bayudan pleaded "no contest" to three counts of criminal sexual assault arising out of the incident. Lapina thereafter filed a <u>civil suit</u> against Bayudan and his wife which was <u>based on the same kidnapping and sexual assault allegations underlying the criminal case</u> against Bayudan. <u>Lapina included claims for negligence</u> in her complaint against Bayudan. These included claims for breach of a duty to provide a safe place in the residence, breach of an express or implied warranty that the residence was safe, a negligent failure to warn Lapina of Bayudan's "pattern" of kidnapping and sexual assault, and negligent infliction of emotional distress.

Bayudan tendered defense of the lawsuit to his insurer, Tradewind Insurance Company ("Tradewind"). Tradewind refused to defend on the grounds that the claims did not arise out of an "occurrence" or accident, as required for coverage under the subject policy, and that coverage was precluded by the subject policy's exclusion for bodily injury intended or expected by the insured. Bayudan brought an action for declaratory relief, contending that the negligence claims in the complaint "raised a potential for coverage and/or indemnification liability" under

the policy. Tradewind successfully moved for summary judgment, arguing that all of Lapina's claims were "inextricably tied" to her allegations of sexual assault.

The Intermediate Court of Appeals of Hawaii (the "ICA") agreed with Tradewind:

> The only facts alleged in Lapina's complaint to support her claims in counts II through V relate to the alleged kidnapping and assault claims in count I. In our view, ***the mere recasting of these facts under various counts does not raise a potential for coverage*** under counts II through V, and thus Tradewind had no duty to defend against the original complaint.

*Bayudan*, 87 Haw. at 387, 957 P.2d at 1069 (emphasis added).

In holding that the "negligence" claims against Bayudan were not covered under an occurrence policy, the ICA adopted the reasoning set forth by the Colorado Court of Appeals in *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger*, 934 P.2d 909 (Colo.Ct.App. 1997), a similar declaratory relief action involving underlying claims based on a sexual assault:

> The instant case is similar to the facts of *Snowbarger*. In that case, the victim of a **sexual assault** sued the insured, alleging claims of, inter alia, sexual assault, battery, extreme and outrageous conduct, breach of fiduciary duty, and negligent infliction of emotional distress….
>
> The Colorado Court of Appeals observed that when both negligent and intentional torts are alleged in a complaint, "the allegations of negligence do not necessarily invoke the duties of the insurer to defend…. It then concluded that the insurer had no duty to defend because there were

no factual allegations to support a negligence claim in the complaint:

> A duty to defend arises when the underlying complaint alleges any facts that might fall within the coverage of the policy. However, here, the only facts recited in the complaint concern the repeated acts of sexual assault. There are no factual allegations provided in the complaint to substantiate a negligence theory or any other theory which might otherwise fall within the coverage of the policy. Hence, since the complaint fails to allege any facts that might fall within the coverage of the policy, [the insurer] has no duty to defend or indemnify.

Moreover, "[s]ince the factual allegations in [the] complaint unquestionably implicate the intentional acts exclusion of the insurance policy, [the insurer] had no duty to defend."

Other courts have agreed that the mere relabeling of a claim for which coverage is excluded to a claim which could raise the potential for coverage is not a permissible manner in which to trigger an insurer's duty to defend. For example, in *Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37, 39–40 (Minn.1994), the Supreme Court of Minnesota rejected the argument that a complaint alleging sexual assault and negligence precipitated an insurer's duty to defend and indemnify the insured…. because "[they] ... amount[ed] to nothing more than a claim that the [defendant and two others] entered [the] plaintiff's home to assault her sexually; in other words, [these] allegation[s] [are] just a variation of the intentional assault claims, which are barred by the intentional act exclusion."

*Bayudan*, *supra*, 87 Hawaii at 387, 957 P.2d at 1069 (citations omitted) (emphasis added). The analysis is identical in the instant action.

In this case, each of the three counts asserted against Fea in the Underlying Complaint arise out of his allegedly depraved and intentional acts of sexually assaulting, molesting, and kidnapping Krauss. By Krauss's own allegations, "**[t]his claim <u>arises out of</u> the <u>attack</u> and <u>sexual assault</u> perpetrated against Plaintiff Julie Krauss by Defendant Lalofau Fea**." Exhibit "1" at p. 3, ¶ 6 (emphasis added). The Underlying Complaint goes on to allege:

> … Fea "gained access into Ms. Krauss' home, he **trapped** her inside her bedroom, **attacked** her, **tore at her clothing**, and **sexually assaulted** her by, amongst other things, **groping** her genitalia and **fondling** her breasts.

*Id.* (emphasis added). The Underlying Complaint further alleges:

> Upon entering the bedroom, Defendant Fea **blocked the door** and Ms. Krauss' exit, thus **trapping her** in the bedroom. Ms. Krauss asked Defendant Fea what he was doing and then tried to move Defendant Fea's arms from the doorframe so she could leave. Defendant Fea responded by asking Ms. Krauss if he could kiss her. Ms. Krauss said no.
>
> Defendant **Fea then forced himself upon Ms. Krauss** and began to **sexually assault** her. During the sexual assault, Defendant Fea placed his arms around Ms. Krauss and attempted to kiss her neck. He groped Ms. Krauss' breasts and buttocks. He tore open Ms. Krauss' shorts and fondled her genitalia.
>
> During this attack, Ms. Krauss feared that she was going

to be physically harmed, including but not limited to being raped by Defendant Fea. During the attack, Defendant **Fea told Ms. Krauss that he had engaged in similar conduct on prior occasions**.

During the assault, Ms. Krauss **attempted to escape** but could not due to Defendant Fea's **size, strength, and the force of his attacks**. Defendant Fea then began to **pull** Ms. Krauss towards her bed. At this point, Ms. Krauss' dog began to bark loudly. This distracted Defendant Fea's attention, and Ms. Krauss was able to push away from Defendant Fea and move into the hallway. Defendant Fea **chased** Ms. Krauss into the hallway, **grabbed** her from behind, and placed his hands on her breasts. Defendant Fea then turned Ms. Krauss around and **pinned** her against the hallway wall with his body. Defendant Fea then moved his hand down the front of Ms. Krauss' shorts and again **fondled** her genitalia as Ms. Krauss tried to stop him.

*Id.* at pp. 5 – 6, ¶ 17 – 26 (emphasis added).

Krauss further alleges that "Defendant Fea's wrongful, criminal, intentional, and outrageous conduct in sexually assaulting and imprisoning Ms. Krauss constitutes **intentional infliction of emotional distress**." *Id.* at p. 12, ¶ 64 (emphasis added). As a direct and proximate result of these intentional acts by Fea, it is alleged that Krauss "suffered and continues to suffer from [, among other things,] pain and suffering; mental anguish; [and] emotional distress, including post-traumatic stress disorder and depression…." *Id.* at p. 13, ¶ 65. It is abundantly clear that these allegations allege only an intentional act which does not give rise to an "occurrence" under Hawaii law.

18

Count Seven of the Underlying Complaint, entitled "negligent infliction of emotional distress," is broadly alleged as to "all defendants". *See id.* at p. 13. In support of Count Seven, Krauss re-alleges and incorporates all of the above-cited intentional act allegations and, as to Fea, adds the sole allegation that "Defendant Fea's conduct in assaulting and imprisoning Ms. Krauss constitutes negligent infliction of emotional distress." *Id.* at p. 13 ¶ 69. Under *Bayudan*, such allegations do not describe an "occurrence" (*i.e.*, an accident) but rather involve intentionally harmful conduct. Krauss's labeling of Count II as a claim for "negligence" does not change this fact.

Fea may contend that an intentional act which gives rise to an unintentional result may constitute an "occurrence" under a liability insurance policy. Because all of the claims in this case arise out of the intentional acts of sexual harassment and assault by Fea, a denial by Fea of the specific intent to cause harm to Krauss is not only unfounded, but is also irrelevant insofar as all of the alleged injuries are the foreseeable result of Fea's alleged sexual harassment and assault of Krauss. *See State Farm Fire & Cas. Co. v. Elsenbach*, 2011 WL 2606005 (D. Hawaii 2011).

In *Elsenbach*, the insured's estranged wife sued the insured in state court, alleging, *inter alia*, that the insured attempted to kill her; assaulted and battered her; and knowingly, intentionally, recklessly, and/or negligently inflicted severe emotional distress upon her "by grabbing her jaws and head, and violently twisting

her head and neck." *Id.* at *1. The insured tendered defense of the lawsuit to State

Farm, which defended him pursuant to a reservation of rights while pursuing

declaratory relief in federal court. Notwithstanding the fact that a claim for

negligent infliction of emotional distress was asserted, Judge Ezra granted State

Farm's motion for summary judgment, concluding that the factual allegations in

the complaint in the underlying lawsuit did not describe an accident, or

"occurrence," within the coverage of the lawsuit. The court added:

> Even if, as Mr. Elsenbach asserts, he did not intend to
> harm Ms. Elsenbach, Ms. Elsenbach's alleged injuries
> and emotional distress are nonetheless the foreseeable
> result of Mr. Elsenbach's purported harassment and
> verbal and physical abuse, and therefore are not covered
> under the Policies.

*Id.* at *11.

Judge Ezra also rejected the insured's attempt to use extrinsic evidence to

create an issue of fact as to the existence of a covered occurrence. The extrinsic

evidence consisted of the dismissal of criminal charges against the insured and a

declaration from the insured's divorce lawyer stating that the judge in the divorce

proceedings found that Ms. Elsenbach had failed to meet her burden of showing

that the marriage was terminated because of physical abuse, something that would

have entitled her to greater benefits under the parties' prenuptial agreement. *Id.* at

*13; *see also Bayudan*, *supra*, 957 P.2d at 1072 (insured's contention that he did

not kidnap and rape the alleged victim did not bring the victim's claims in the

underlying lawsuit within scope of coverage); *Allstate Ins. Co. v. Kim*, 121 F.

Supp. 2d 1301, 1305–06 (D. Haw. 2000) (concluding that although the insured was

acquitted of the criminal charges that gave rise to the civil lawsuit, the insurer

nonetheless had no duty to defend or indemnify the insured for the claims in the

civil suit because they were intentional and criminal in nature and therefore were

excluded from coverage under the policies at issue).

    Decisions from other jurisdictions are in accord. *See, e.g., Allstate Ins. Co. v.

Korytkowski*, 2006 WL 1461121 (Conn.Super. 2006) (no occurrence where

insureds' minor son allegedly assaulted victim and "negligently" and "carelessly"

caused victim to be struck in the jaw; underlying complaint failed to allege any

facts separate from alleged assault that would support allegations of "negligence");

*Anderson v. Southern Guar. Ins. Co. of Georgia*, 508 S.E.2d 726 (1998) (no

occurrence where insured allegedly "maliciously," "<u>negligently</u>," and

"intentionally" struck plaintiff with cane); *State Farm Fire & Cas. Co. v. Wolf*, 281

F. App'x 655, 656 (9th Cir. 2008) (no occurrence because "negligence" claim "is

derivative of and inseparable from … alleged sexual misconduct"); *Commercial

Union Assur. Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir. 1999)

(denying coverage on grounds that "obviously, there was nothing 'accidental'

about the [insured's] alleged conduct … [where t]hey intentionally installed …

concealed video cameras" in a public restroom).

Because all of the injuries alleged by Krauss are "inextricably tied" to and "arise out of" Fea's alleged attack and sexual assault, there is no "occurrence" and, therefore, no coverage under the Policy. Regardless of the "negligence" designation assigned to Count Seven of the Underlying Complaint, said claim is clearly derivative of and inseparable from Fea's alleged attack and sexual assault and thus does not constitute a claim for accidental conduct. Telling of the fact that Count Seven does not stand independently is the manner in which it re-alleges and incorporates by reference all of the preceding intentional/sexual assault allegations.

Under the above-cited authorities, it is clear that the allegation that Fea "negligently assaulted and imprisoned" Krauss does not allege a coverage-triggering "occurrence" against Fea under Coverage A and amounts to nothing more than a failed attempt to trigger insurance coverage for intentional acts. Under the above-cited authorities, there is no factual basis in the Underlying Complaint to support any covered claim for negligence against Fea.

As discussed above, even if we were to assume, arguendo, that Krauss's specific injury was not intended by Fea, the Underlying Complaint still fails to state a claim which arises from Fea's accidental conduct (i.e., an occurrence) because all claims "arise out of" and are "inextricably tied" to his intentional acts and omissions. These allegations of sexual misconduct, which form the basis of all of the underlying claims against Fea, clearly do not constitute an "occurrence"

under Coverage A and under Hawaii law.

**B.    Coverage B does not apply pursuant to the Policies' exclusions for criminal acts.**

The Policies exclude coverage under Coverage B for "'Personal and Advertising injury' **arising out of** a criminal act committed by or at the direction of the insured." PSCS at ¶¶ 14, 16; Exhibit "7", Policy Form CG0001 (12/07), p. 6; Exhibit "8", Policy Form FM101.0.1108 (08/05), p. 17 (emphasis added). In Hawaii, United States district courts have given the phrase "arising out of" a broad construction in insurance policies.  In *Allen v. Scottsdale Ins. Co.*, Judge Ezra stated:

> The Ninth Circuit has adopted a more broad reading of the meaning of "arising out of" when interpreting insurance policy clauses, than the meaning that Plaintiffs encourage this court to adopt in this case. In interpreting a phrase in an insurance policy, the Ninth Circuit has stated that "arising out of" are words of much broader significance than "caused by".  They are ordinarily understood to mean "originating from," "having its origin in," "growing out of" or "flowing from" or in short, "incident to, or having connection with".

> In *Continental Casualty Company v. City of Richmond*, an insurer sought a declaratory judgment that its insurance policy did not cover the claims asserted in a civil rights and wrongful death action that parties brought alleging that police officers caused the death of an inmate.  The insured argued that although the policy excluded coverage for the wrongful death claims, the policy independently covered the civil rights claims. Examining California state law, the court rejected the insured's argument based on the court's interpretation of

the clause "arising out of" and its belief that the civil rights claims originated from the wrongful death of the inmate.

*Allen v. Scottsdale Ins. Co.*, 307 F. Supp. 2d 1170, 1179 (D. Haw. 2004)

(citations and internal quotation marks omitted).

Similarly, the Ninth Circuit, interpreting California law, has also given this

clause a broad construction.

California courts consistently have adopted broad definitions of "arising from" and "arising out of." One court equated "arising out of" with "origination, growth, or flow from the event." Another court … held that "arising out of the use of an insured vehicle imports some kind of sequential relationship between the vehicle and the accident." Thus, the biting of an automobile passenger by a dog that was being transported in the vehicle was held to arise from the use of the vehicle and was covered by the policy. The court added that "arising out of" has been interpreted more broadly than "caused by" to include the notion of "incident to or having connection with."

*Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir. 1985)

(citations omitted).

As noted above, Fea was originally charged with three felony counts of

sexual assault in the third degree (HRS §707-732f) and one count of felony

kidnapping (HRS § 707-720(1)(d)). Pursuant to a plea arrangement, Fea pled no

contest to and was subsequently found guilty and convicted of three counts of

sexual assault in the fourth degree (HRS § 707-733(1)(a)) and to one count of

unlawful imprisonment in the second degree (HRS § 707-722(1)).[1]

A person commits the offense of sexual assault in the fourth degree under

HRS § 707-733(1)(a) if:

> [t]he person knowingly subjects another person to **sexual contact by compulsion** or causes another person to have sexual contact with the actor by compulsion….

A person commits the offense of unlawful imprisonment in the second degree

under HRS § 707-722(1) if:

> [t]he person knowingly **restrains** another person.

As stated in the Underlying Complaint, all of Krauss's claims "arise[] out of the

attack and sexual assault perpetrated against Plaintiff…." Thus, Coverage B's

criminal act exclusion clearly applies and precludes coverage under the Policies.

A number of jurisdictions have held that the identical or substantially similar

criminal act exclusion at issue here is unambiguous and excludes coverage for

injuries resulting from criminal acts by an insured, regardless of whether the

insured intended to commit the act or to cause the harm. *See*, *e.g.*, *Hooper v.*

*Allstate Ins. Co.*, 571 So. 2d 1001, 1003 (Ala. 1990) (criminal act exclusion

unambiguously excluded coverage where intoxicated insured "negligently" handed

gun to friend which discharged and shot friend); *Allstate Ins. Co. v. S.L.*, 704

---

[1] Plaintiffs recognize that a nolo contendere plea and subsequent conviction does not constitute conclusive evidence that the criminal acts exclusion applies. However, as discussed in Section D below, Fea's conviction constitutes evidence of the commission of a crime in a subsequent civil action.

F.Supp. 1059, 1060 (S.D.Fla.1989), aff'd, 896 F.2d 558 (11th Cir.1990) (criminal

act exclusion, "based on overwhelming federal authority", bars coverage for

alleged sexual misconduct where insured claims to suffer from disability of

pedophilia); *Allstate Ins. Co. v. Travers*, 703 F.Supp. 911, 915 (N.D.Fla.1988)

(criminal act exclusion precludes coverage for alleged sexual misconduct despite

insured's claim of no intent to cause injury); *Allstate Ins. Co. v. Foster*, 693

F.Supp. 886, 889 (D.Nev.1988) (criminal and intentional act exclusions preclude

coverage as to claim that wife knew of husband's sexual assaults and molestations

but negligently failed to warn); *Allstate Ins. Co. v. Schmitt*, 238 N.J.Super. 619,

570 A.2d 488, 492 (App.Div.1990) (criminal act exclusion precludes coverage as

to unintended injury arising from bar fight); *Allstate Ins. Co. v. Sowers*, 97 Or.App.

658, 776 P.2d 1322, 1323 (1989) (criminal act exclusion precludes coverage for

claim by police officer who was injured while insured was resisting arrest).

It is well settled that a "criminal act", for purposes of a liability policy's

coverage exclusion, is <u>broadly interpreted</u> so as to preclude coverage where "the

insured engages in conduct which is described as criminal in the penal code," and

does not require inquiry into the subjective intent or expectation of the insured.

*See*, *e.g.*, *Allstate Insurance Co. v. Burrough*, 914 F. Supp. 308, 312 (W.D. Ark.

1996), aff'd, 120 F.3d 834 (8th Cir.1997) (criminal act exclusion precludes

coverage where minor child gives father's hand gun to another minor who

accidentally shoots victim); *American Family Ins. Mut. Ins. Co. v. White*, 65 P.3d 449, 552 & n.1 (Ariz. App. 2003) (citing various cases for the proposition that nearly every jurisdiction considering the phrase has interpreted "criminal acts" to include all crimes without regard for intent); Steven Plitt, et al., *7A Couch on Ins.* § 103:40 (3d ed. 2015) (intent requirement does not extend to criminal-act exclusion). Thus, the insurer need not prove intent where the, as here, the plain language of the policy's criminal act exclusion has no intent requirement. *See Progressive Northern Ins. Co. v. McDonough*, 608 F.3d 388 (8th Cir. 2010).

Under the foregoing authorities, it is clear that Fea's alleged attack and sexual assault of Krauss is a criminal act. It is also clear that such alleged action by Fea gives rise to all claims asserted against him in the Underlying Lawsuit. Thus, the Policy's criminal acts exclusion bars coverage under Coverage B as to all claims as a matter of law.

### C.    Coverage A and Coverage B do not apply pursuant to the Policies' exclusions for injury expected or intended from the standpoint of the insured.

Coverage A does not apply to "'Bodily Injury' or 'Property Damage' expected or intended from the standpoint of the Insured."  PSCS at ¶¶ 14, 16; Exhibit "7", Policy Form CG0001 (12/07), p. 2; Exhibit "8", Policy Form FM101.0.1108 (08/05), p. 15. Similarly, Coverage B is inapplicable to "'Personal and Advertising Injury' caused by or at the direction of the insured with knowledge

that the act would violate the rights of another and would inflict 'Personal and Advertising Injury'". PSCS at ¶¶ 14, 16; Exhibit "7", Policy Form CG0001 (12/07), p. 6; Exhibit "8", Policy Form FM101.0.1108 (08/05), p. 17. The same reasons supporting a finding of no "occurrence" discussed in Section A, *supra*, also support the conclusion that coverage is precluded by the Policies' exclusions for injury which is either expected or intended from the standpoint of the person seeking coverage. As noted, the Underlying Complaint alleges that Fea intentionally attacked, sexually assaulted, fondled, and imprisoned Krauss which caused her to suffer from emotional distress. *See* Exhibit "1", generally. The alleged injuries (*i.e.*, emotional distress) are such as a reasonable person would expect to result from the alleged sexual attack and sexual assault, and the intended injury exclusions thus preclude applicability of both Coverages A and B. *See, e.g.*, *Blanco* and *Estate of Caraang*, *supra*; *State Farm Mut. Auto. Ins. Co. v. Pichay*, 834 F. Supp. 329 (D.Haw. 1993).

**D.    Fea's criminal conviction supports a finding of (1) no-occurrence and (2) applicability of the intentional and criminal act exclusions.**

Fea's plea of no contest to and conviction of three counts of sexual assault in the fourth degree and to one count of unlawful imprisonment in the second degree, further supports a finding of no-occurrence under Coverage A, applicability of the criminal acts exclusions under Coverage B, and applicability of the intentional act

exclusions under Coverages A and B. A person commits the offense of sexual

assault in the fourth degree under HRS § 707-733(1)(a) if:

> [t]he person **knowingly** subjects another person to sexual
> contact by compulsion or causes another person to have
> sexual contact with the actor by compulsion….

A person commits the offense of unlawful imprisonment in the second degree

under HRS § 707-722(1) if "[t]he person **knowingly** restrains another person."

In *Blanco*, the Hawaii Supreme Court found that an insured's plea of no

contest to attempted assault in the first degree (a willful and/or intentional crime)

was <u>relevant</u> to but not dispositive of the issue of whether an insurer had a duty to

defend under a homeowner's policy that contained an exclusion for intentional

acts. The court noted that a <u>plea</u> of no contest, by the weight of authority, cannot be

used against the person making it as an admission in any civil suit for the same

act." *Id.* at 880. However, the fact of <u>conviction</u> subsequent to such plea "would be

evidence, although not conclusive evidence of [the] commission of the crime in

question in a civil action." *Id.* (citing *Asato v. Furtado*, 52 Haw. 284, 474 P.2d 288

(1970)). In recognition of these authorities, Judge Mollway noted in *State Farm*

*Fire and Cas. Co. v. Gorospe*, 106 F.Supp.2d 1028 (D.Haw. 2000) as follows:

> Here, Argel [the insured] was originally charged with the
> crime of murder in the second degree. Argel later pled no
> contest to manslaughter. A no contest plea is different
> from a guilty plea in that the defendant does not admit
> guilt. **Despite the defendant's refusal to admit guilt, a**
> **judge accepts the plea because the attendant**

> **circumstances and evidence demonstrate with reasonable certainty that the defendant committed the crime to which he is pleading**….
>
> The undisputed evidence in this case demonstrates that Argel's shooting of Gorospe resulted in injuries that were, at the very least, "expected." Coverage for expected injuries is clearly excluded under the Policy.

*Id.* at 1034 (emphasis added).

Thus, Fea's criminal <u>conviction</u> (requiring "reasonable certainty" that he "knowingly" restrain and/or subject Krauss to sexual contact by compulsion) supports the granting of the instant Motion on all of the grounds discussed above.

### E. <u>There is no coverage for punitive damages.</u>

The Underlying Complaint prays for punitive damages. Under Hawaii law, "[c]overage under any policy of insurance issued in [Hawaii] shall not be construed to provide coverage for punitive or exemplary damages unless specifically included." Haw. Rev. Stat. § 431:10-240. The Policy does not specifically include coverage for punitive damages. Accordingly, Plaintiffs are not liable for any punitive damages awarded in the Underlying Lawsuit. *See Allstate v. Takeda*, 243 F.Supp.2d 1100, 1109 (D.Haw. 2003).

## IV. <u>CONCLUSION</u>

There being no opposition, appearance, or other communication by Fea, Given the entry of default on June 3, 2016, and after consideration of the factors set forth in Eitel v. McCool, 782 F.2d 1470 (9th cir. 1986), the Court recommends

that the Motion be GRANTED to the extent Plaintiffs seeks default judgment, and that the district court find that Plaintiffs do not have a duty to defend or indemnify Fea with respect to the <u>Krauss</u> action pending in state court.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii,  December 1, 2016.



Kevin S.C. Chang
United States Magistrate Judge

*United States Fire Insurance Company And The North River Insurance Company v. Fea;* Civil No. 1-16-cv-00173 DKW/KSC; FINDINGS AND RECOMMENDATION GRANTING PLAINTIFFS UNITED STATES FIRE INSURANCE COMPANY AND THE NORTH RIVER INSURANCE COMPANY'S MOTION FOR DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMARY JUDGMENT AGAINST DEFENDANT LALOFAU FEA